IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BARRY JEKOWSKY,

    Plaintiff,

v.

BMW OF NORTH AMERICA, LLC,

    Defendant.

No. C 13-02158 JSW

**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS**

Now before the Court is the motion to dismiss filed by defendant BMW of North America, LLC. ("BMW"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court denies BMW's motion to dismiss.[1]

**BACKGROUND**

Plaintiff leased a BMW Z4 equipped with BMW alloy wheels in February 2011. (First Amended Compl. ("FAC"), ¶¶ 8, 12.) Plaintiff contends that the alloy wheels are defective and brings a purported class action on behalf of purchasers of and persons who leased a BMW Z4 equipped with these wheels. (*Id*., ¶ 1.) Plaintiff further alleges that the alloy wheels were defective in materials and workmanship. It was this defect that caused the wheels to crack during the warranty period. (*Id*., ¶ 47.)

---

[1] The Court HEREBY GRANTS BMW's request for judicial notice. *See* Fed. R. Evid. 201.

Plaintiff alleges that the alloy wheels are prone to cracking under normal driving conditions after being used for as little as 10,000 miles. (*Id*., ¶ 2.) The cracking creates a safety hazard. (*Id*.)

The vehicles with these alloy wheels come with a factory four year/50,000 mile warranty, but BMW has refused to honor this warranty. (*Id*., ¶ 2.) Plaintiff alleges that the fault for the cracking "lies more with the particular allow of metal used by BMW than the owner's driving." (*Id*., ¶ 3.)

Plaintiff alleges that BMW knew or should have known that the alloy wheels were prone to cracking during the warranty period. (*Id*., ¶ 4.) To support this allegation, Plaintiffs rely, *inter alia*, on consumer complaints, watchdog reports, and federal regulatory databases. (*Id*., ¶¶ 4, 18.) Additionally, authorized dealerships in California were receiving "an inordinate number of complaints from dealers regarding cracked Alloy Wheels during the warranty period." (*Id*., ¶ 5.)

In late September 2012, after driving the vehicle for less than 19,300 miles, Plaintiff discovered that one of his rear wheels had developed cracks in multiple locations. (*Id*., ¶ 13.) Three months later, Plaintiff began experiencing difficulty maintaining tire pressure in another wheel. By that time, Plaintiff had driven the vehicle only 23,000 miles. Upon inspection by the dealer, Plaintiff discovered that the wheel was cracked in multiple locations. (*Id*., ¶ 16.)

Driving on a cracked wheel presents a safety hazard. The crack may spread and cause the wheel to weaken and separate. (*Id*., ¶ 14.)

Based upon these allegations, Plaintiff brings claims for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*., breach of express and implied warranties in violation of the California Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code §§ 1790, *et seq*., violations of the California Consumer Legal Remedies Act ("CLRA"), §§ 1750, *et seq*., and violations of California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq*.

The Court will address additional facts as necessary in the remainder of this order.

**ANALYSIS**

**A.     Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

In addition, when a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires the plaintiff to state with particularity the circumstances constituting fraud, including the "'who, what, when, where, and how'" of the charged misconduct. *See United States ex rel Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *United States ex rel. Lee v. Smithkline Beacham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) ("Complaints brought under the FCA must fulfill the requirements of Rule 9(b).") "[T]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid*, 616 F.3d at 998 (omitting internal quotations and citations).

3

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**B.      BMW's Motion to Dismiss.**

**1.      Plaintiff's Implied Warranty Claim Under California Law.**

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The implied warranty "is coextensive in duration with an express warranty which accompanies the consumer goods," but "in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c). Here, neither party contests that, due to the express warranties at issue, Plaintiff's implied warranty under the Song-Beverly Act had a one-year duration.

BMW contends that because Plaintiff alleges that he did not discover the cracking of his alloy wheels until September 2012, more than one year after Plaintiff leased the vehicle, Plaintiff cannot state a claim for violation of an implied warranty under the Song-Beverly Act. Plaintiff responds that the latent defect, although not discovered by him until more than a year, was present when he leased the vehicle.

In *Mexia v. Rinker Boat Co, Inc.*, 174 Cal. App. 4th 1297, 1304 (2009), the court held that "[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." The court explained that "[u]ndisclosed latent defects ... are the very evil that the implied warranty of merchantability was designed to remedy," and stressed the "distinction between unmerchantability caused by a latent defect and the

4

1  subsequent discovery of the defect." *Id*. at 1305. "In the case of a latent defect, a product is
2  rendered unmerchantable, and the warranty of merchantability is breached, by the existence of
3  the unseen defect, not by its subsequent discovery." *Id*. As for the suggestion "that latent
4  defects must be discovered and reported to the seller within the specified time," the court
5  concluded it "has no support in the text of the statute." *Id*. at 1310.

6  This Court "must defer to the California Court of Appeal's interpretation [of a state
7  statute] unless there is convincing evidence that the California Supreme Court would decide the
8  matter differently." *California Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir.
9  2003). In *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 924 (C.D. Cal. 2010),
10 the district court determined that the federal district court cases disagreeing with the holding in
11 *Mexia* were "not 'convincing evidence' that *Mexia* would be rejected by the California Supreme
12 Court."[2] This Court concurs with the finding in *Ehrlich*. As noted by another district court,
13 "*Mexia* is a thoroughly reasoned, published opinion by a California Court of Appeal that is less
14 than five years old. The court took into account the statutory history, its language, and its
15 purpose in reaching its decision. It ultimately concluded that applying the durational limits to
16 latent defects that existed at the time of sale and manifest after those limits expire is
17 'unsupported by the text of the statute, legal authority, or sound policy.'" *Majdipour v. Jaguar*
18 *Land Rover North America, LLC*, 2013 WL 5574626, *23 (D.N.J. Oct. 9, 2013) (quoting *Mexia*,
19 174 Cal. App. 4th at 1311); *see also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d
20 1220, 1243 (C.D. Cal. 2011) ("A vehicle that operates for some time after purchase may still be
21 deemed 'unfit for ordinary purposes' if its components are so defective that the vehicle becomes

---

[2] In support of the proposition that *Mexia* is contrary to California law, the district court cases rely on two California cases, neither of which expressly address the issue of the discovery of latent defects. *See Larsen v. Nissan North Amer.*, 2009 WL 1766797 (2009) (unpublished); *Atkinson v. Elk Corp.*, 142 Cal. App. 4th 212 (2006). Moreover, in both of those cases, the claims were filed more than four years after the products were sold, thus, even under the analysis under *Mexia*, those claims would have been barred by the four-year statute of limitations period. Additionally, the reasoning underlying those district cases is that the holding of *Mexia* would indefinitely extend the implied warranty. However, as explained by the Court in *Mexia*, the four-year statute of limitations period still provides an outside limitation on claims for breach of an implied warranty. *Mexia*, 174 Cal. App. 4th at 1306, 1311. Additionally, a plaintiff would still need to prove that the alleged defect existed during the one-year duration period, even if the defect was not discovered until the one-year duration period had expired. *See Mexia*, 174 Cal. App. 4th at 1308.

5

inoperable within an unacceptably short period of time."); *Keegan v. Amer. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 948-49 (C.D. Cal. 2012).

Notably, in the four years since *Mexica* was issued in 2009, no California case has explicitly criticized *Mexia* or determined that its holding was contrary to California law. Moreover, at least one recent published California case has cited *Mexia* with approval. *See Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 149 (2013) ("Indeed, a defect that first appears after a warranty has expired does *not* necessarily mean that the defect did not exist when the product was purchased.") (emphasis in original) (citing *Mexia*, 174 Cal. App. 4th at 1308).

Here, Plaintiff alleges that when the vehicle was delivered to him, it was equipped with allow wheels "that were defective in materials and workmanship." (FAC, ¶ 47.) The defect caused the wheels to crack and "required the wheels, and in many instances the tires, to be replaced after being used for as little as 10,000 miles." (*Id*.) The fact that Plaintiff did not discover the cracking until February 2012 does not necessarily mean that Plaintiff cannot prove the existence of a defect within the one-year duration period. Plaintiff has adequately alleged the existence of a breach of the implied warranty within the one-year duration period. Accordingly, the Court denies BMW's motion as to Plaintiff's claim for breach of the implied warranty under the Song-Beverly Act.

### 2. Plaintiff's Express Warranty Claim Under California Law.

BMW argues that Plaintiff has not sufficiently stated a claim for breach of express warranty under the Song-Beverly Act because he has not alleged that BMW tried but was unable to fix the claimed defect or that he asked BMW to repurchase his vehicle. To state a claim for breach of an express warranty under the Song-Beverly Act, a plaintiff must allege the following elements: "(1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App.4th 785, 798-99 (2006). Whether the number of repair attempts

6

1 was reasonable "is a question of fact to be determined in light of the circumstances, but at a
2 minimum there must be more than one opportunity to fix the nonconformity. . . . Each occasion
3 that an opportunity for repairs is provided counts as an attempt, even if no repairs are actually
4 undertaken." *Id*. at 799 (internal citation omitted).

5       Plaintiff alleges that he brought his car to BMW or its authorized agent twice and that
6 BMW refused to repair the wheels and tires under the warranty. (FAC, ¶ 13, 15-17.) Whether
7 the two opportunities Plaintiff provided to BMW were sufficient to satisfy the reasonableness
8 requirement is a question of fact which the Court may not determine at this procedural stage.

9       BMW argues, and Plaintiff does not dispute that, based on the language within BMW's
10 written warranty, any claims for breach of express warranty must be limited to those premised
11 on a manufacturing defect, and not a design defect. According to BMW, Plaintiff's complaint
12 addresses only design defects. "California recognizes two distinct categories of product
13 defects: manufacturing defects and design defects." *McCabe v. Am. Honda Motor Co.,* 100 Cal.
14 App. 4th 1111, 1119 (2002). "A manufacturing defect exists when an item is produced in a
15 substandard condition. . . . Such a defect is often demonstrated by showing the product
16 performed differently from other ostensibly identical units of the same product line." *Id*. at
17 1120 (internal citations omitted). In contrast, "[a] design defect . . . exists when the product is
18 built in accordance with its intended specifications, but the design itself is inherently defective."
19 *Id.*

20       Plaintiff does allege that "the fault for the cracking lies more with the particular alloy of
21 metal used by BMW than the owner's driving." (FAC, ¶ 3.) However, Plaintiff also alleges
22 that the vehicles were "defective in materials and workmanship" when they were delivered.
23 (*Id*., ¶ 47.) Although Plaintiff may only pursue this claim to the extent it is based on an alleged
24 manufacturing defect, Plaintiff pleads sufficient facts to state such a claim. To the extent
25 Plaintiff ultimately will be successful in demonstrating that each car purchased or leased during
26 the class period suffered a manufacturing defect, as opposed to a design defect more commonly
27 affecting an entire class, remains to be determined. Moreover, Plaintiff's ultimate ability to
28 pursue this claim on a class-wide basis may not be successful. However, these are issues that

7

the Court may not address on a motion to dismiss for failure to state a claim. The Court denies BMW's motion to dismiss as to Plaintiff's claim for breach of an express warranty under the Song-Beverly Act.

### 3. Magnuson Moss Warranty Claim.

BMW moves to dismiss Plaintiff's claim under the Maguson-Moss Act on the grounds that Plaintiff's state law warranty claims fail. *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006) ("failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnuson-Moss"); *see also Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 798 (2002) (finding that failure to allege state law claim for breach of express or implied warranty was fatal to Magnuson-Moss Act claim because state law governs such claims). However, as discussed above, the Court is not dismissing Plaintiff's state-law warranty claims. Therefore, the Court denies BMW's motion to dismiss on this ground.

### 4. Plaintiff's UCL and CLRA Claims.

Plaintiff's UCL and CLRA claims are premised on BMW's omissions. BMW argues that Plaintiff fails to allege sufficient facts to show that BMW had a duty to disclose because, according to BMW, Plaintiff fails to allege that BMW was aware of the defect at the time of sale. Upon review of Plaintiff's FAC, the Court finds that Plaintiff pleads sufficient facts to show that BMW was aware of the defect. Therefore, the Court denies BMW's motion to dismiss on this ground.

BMW further argues that Plaintiff fails to sufficiently allege a safety-based need for disclosure. However, as Plaintiff argues, and BMW does not dispute, there is no need to allege a safety risk with respect to a defect that manifests within the warranty period. "[A] manufacturer has a duty to disclose any defects that fall within the warranty period, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed." *Decker v. Mazda Motor of America, Inc.*, 2011 WL 5101705, *4 (C.D. Cal. Oct. 24, 2011). Because Plaintiff alleges a defect that manifested within the

8

warranty period, the Court need not determine whether Plaintiff sufficiently alleged a safety risk and denies BMW's motion on this ground.

BMW also moves to dismiss Plaintiff's UCL and CLRA claims on the grounds that Plaintiff fails to sufficiently allege reliance. To allege reliance on an omission, Plaintiff must allege that had the omitted information been disclosed, he would have been aware of it and would have behaved differently. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Although Plaintiff alleges that had the omitted information been disclosed, he would have behaved differently, he does not allege any facts which, if true, would support an inference that he would have been aware of the disclosure. Accordingly, he fails to sufficiently allege reliance. Therefore, the Court will dismiss Plaintiff's UCL and CLRA claims but will provide leave to amend.

## CONCLUSION

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART BMW's motion to dismiss. The Court GRANTS the motion to dismiss with respect to Plaintiff's UCL and CLRA claims and DENIES the motion as to the remainder of Plaintiff's claims. The Court is providing Plaintiff leave to amend his UCL and CLRA claims. If Plaintiff elects to amend these claims, he shall file an amended complaint by no later than January 10, 2014. Moreover, if Plaintiff files an amended complaint, he shall also file by January 10, 2014, a side-by-side comparison of the FAC and the amended complaint, or a redline version of the two complaints.

**IT IS SO ORDERED.**

Dated: December 13, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9

Case3:13-cv-02158-JSW Document34 Filed12/13/13 Page10 of 10