KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER Bar No. 066401
NANCY BARRON Bar No. 099278
ELLIOT CONN Bar No. 279920
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
Facsimile: (415) 632-1901

CHAVEZ & GERTLER LLP
MARK A. CHAVEZ Bar No. 090858
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 381-5599
Facsimile: (415) 381-5572

Attorneys for Plaintiff Barry Jekowsky and the proposed class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BARRY JEKOWSKY, individually and on behalf of all others similarly situated,

Plaintiff.

vs.

BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTOREN WERKE AG

Defendants.

______________________________________/

**Case No. 3:13-cv-02158-VC**

CLASS ACTION

**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND FOR SERVICE AWARD**

Unlimited Civil Case

**Date: October 29, 2015**
**Time: 10:00 a.m.**
**Dept.: Courtroom 4, 17th Floor**
**Hon. Vince Chhabria**

# TABLE OF CONTENTS


**NOTICE AND MOTION** 1

**MEMORANDUM OF POINTS & AUTHORITIES** 1

**I. INTRODUCTION** 1

**II. STATEMENT OF THE CASE** 3

A. SUMMARY OF PLAINTIFFS' CLAIMS 3

B. PROCEDURAL HISTORY 3

C. SETTLEMENT TERMS 5

**III. ARGUMENT** 6

A. PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES 6

B. THE REQUESTED AWARD IS REASONABLE AND APPROPRIATE 7

1. The Time Expended by Plaintiff was Reasonable and Necessary to Achieve the Final Outcome, and is Well Within the Range of Fee Awards for Litigation of This Type 9

2. The Process for Arriving at the Negotiated Fee Award was Fair and Equitable 9

3. The Hourly Rates for Plaintiff's Counsel are Well Within the Range of Rates Charged by Lawyers with Similar Skills, Qualifications, and Experience 10

4. The Case Includes Many of the Factors Normally Warranting a Multiplier Award 10

C. PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF COSTS 11

D. THE COURT SHOULD AWARD THE CLASS REPRESENTATIVE THE REQUESTED SERVICE FEE 12

**IV. CONCLUSION** 12


# TABLE OF AUTHORITIES

**FEDERAL STATUTES**


15 U.S.C. §2301 *et seq.* 2,4

15 U.S.C. §2310(d)(2)) 7

Federal Rule of Civil Procedure 23(h) 6,11

Federal Rule of Civil Procedure 54(d)(1) 11

**FEDERAL CASES**


| | |
|---|---|
| *Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018 (9th Cir. 2009); | 7 |
| *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S.Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) | 9 |
| *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) | 12 |
| *MRO Communic's, Inc. v. AT&T Co.,* 197 F.3d 1276 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000) | 7 |
| *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) | 9,12 |
| *United Steelworkers v. Phelps Dodge* 896 F.2d 403 (9th Cir. 1990) | 10 |
| *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp.294 (N.D. Cal. 1994) | 12 |
| *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) | 11 |
| *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999), *cert denied,* 529 U.S. 1066 (2000) | 9 |


**CALIFORNIA STATUTES**


| | |
|---|---|
| Business & Professions Code §17200, *et seq*. | 2,4 |
| Civil Code §1750 *et seq*. | 2,4 |
| Civil Code §1780(e) | 7 |
| Civil Code §1790 *et seq.* | 2,4 |
| Civil Code §1794(d) | 6 |
| Code of Civil Procedure §1021.5 | 7,11 |


**CALIFORNIA CASES**


| | |
|---|---|
| *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407 | 12 |
| *Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380 | 12 |
| *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 | 7 |
| *Downey Cares v. Downey Community Dev. Com.* (1987) 196 Cal.App.3d 983 | 7 |
| *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668 | 7,11 |
| *Graham v DaimlerChrysler* (2003) 34 Cal.4th 553 | 10 |
| *In re Consumer Privacy Cases* (2009) 175 Cal.App.4th 545 | 9 |
| *Ketchum v. Moses* (2001) 22 Cal.4th 1122 | 8,10 |

*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19 — 7,8,9,10

*Press v. Lucky Stores* (1983) 34 Cal.3d 311 — 8

*Serrano v. Priest* (1977) 20 Cal.3d 25 — 7,8

*Serrano v. Unruh* (1982) 32 Cal.3d 621 — 8,10

*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440 — 8

*Wershba v. Apple Computer* (2001) 91 Cal.App.4th 224 — 11

**NOTICE AND MOTION**

TO DEFENDANT BMW OF NORTH AMERICA, LLC, BAYERISCHE MOTOREN WERKE AG, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 29, 2015 beginning at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 90012, Plaintiff Barry Jekowsky will and hereby does move this Court for an award of costs and attorneys' fees in the amount of $635,000.00 to Class Counsel and a service award to the class representative. The motion, which is unopposed, will be based on the accompanying Memorandum, Declarations of Bryan Kemnitzer, Mark Chavez and Barry Jekowsky and the Exhibits thereto, the files and records in this action, and such further evidence and argument as may be presented at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This is an action for damages, restitution and injunctive relief, which Plaintiff Barry Jekowsky brought on behalf of himself and a proposed nationwide class of consumers whose BMW model Z4s suffer from a defect in the metal alloy wheel rims manufactured and sold by Defendants BMW of North America, LLC and Bayerische Motoren Werke AG (hereafter collectively, "BMW"). The goal of the litigation was, and is, to remedy BMW's misrepresentations and breach of warranties to repair or replace these unsafe and defective wheels. Class Counsel seeks approval of fees and costs in the amount of $635,000.00 for the reasons set forth below.

Specifically, Plaintiff and the proposed Settlement Class charge that BMW "V Spoke" Style 296 light alloy wheels on certain 2009-2012 model year BMW Z4 vehicles were prone to cracking under normal driving conditions and failed within the warranty period. Nonetheless, BMW refused to honor its express and implied warranties to replace the defective wheels without charge. (*See*, Kemnitzer Decl., ¶2) As more fully described in Plaintiff's Memorandum in Support of Preliminary Approval (Docket No. 65), Plaintiff and the Settlement Class contend

that when the wheels cracked, BMW required them to pay for repairs they should not have had to pay for, in violation of state and federal consumer protection statutes, including: the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq*., the Song-Beverley Consumer Warranty Act Civil Code §1790 *et seq*., California's Unfair Competition Law ("UCL"), Business and Professions Code §17200 *et seq*., and the Consumers Legal Remedies Act ("CLRA"), Civil Code §1750 *et seq*. (*See,* Fourth Amended Complaint. Docket No. 73).

The parties have entered into a Settlement Agreement (*See*, Declaration of Bryan Kemnitzer in Support of Preliminary Approval, filed February 13, 2015, Exhibit 1 (Docket No. 66)),[1] which was preliminarily approved by this Court by order filed March 24, 2015 (Docket No. 72).

The Settlement Class is defined as all residents of the United States, who currently own or lease, or previously owned or leased, a Class Vehicle, subject to a list of specified exclusions. (SA ¶¶I.8, I.10) "Class Vehicles" are 2009 - 2012 model year BMW Z4 vehicles equipped with BMW Style 296 wheels ("Class Wheels"), unless customized. (SA ¶¶I.14, 1.15, III(A).) At least 1,617 class members meet this definition (Docket No. 66, ¶26).

The parties have agreed to settle, with specific and substantial benefits to an ascertainable class. This excellent settlement was the product of hard-fought litigation, involving motion practice, discovery, investigation, expert inspections, and ultimately the assistance of an experienced mediator.

As part of the settlement, "Defendant agrees not to oppose Class Counsel's application for attorney's fees and costs in the total amount of $635,000.00." This clear sailing agreement is not random or exorbitant, but fully supported by the evidence of Class Counsel's lodestar in the form of declarations, and amply satisfies the rule of cross-checking against the result achieved for the Settlement Class. Not only that, but the fees and costs are to be paid separate and apart from class recovery and in no way reduce the class benefits achieved. Thus, because the requested award is reasonable and appropriate, the Court should grant Plaintiffs' motion in full.

//

[1] All ¶ references are to that document, unless otherwise noted.

## II. STATEMENT OF THE CASE

### A. SUMMARY OF PLAINTIFFS' CLAIMS

BMW is engaged in the manufacture and sale of new motor vehicles, all of which come with a standard factory 4-year/50,000 mile warranty, whether sold or leased to the American consumer. Among the vehicles sold under the BMW brand is the Z4 model, certain versions of which were factory-equipped with alloy BMW Style 296 wheels ("Class Wheels").

On or about February 2011, Barry Jekowsky leased a new 2011 BMW model Z4 equipped with Class Wheels, with a standard factory 4-year/50,000 mile warranty. In September 2012, after having driven the vehicle less than 19,300 miles and thus within the warranty period, Plaintiff discovered cracks in one of the wheels. After inspection, an authorized BMW dealer advised him the wheel and tire should be replaced. BMW refused to allow its authorized dealership to replace the wheel under warranty, and required Plaintiff to pay for repairs to the wheel, as well as for the affected tire. Three months and only 4,000 miles later, still well within the warranty period, Plaintiff again had wheel trouble and returned to the authorized BMW dealer. The dealer found that the replacement wheel was cracked in multiple locations, requiring a second replacement. Again Plaintiff was charged for repairs. In all, Plaintiff paid $2,090.68 to replace the two defective wheels and affected tires.

Jekowsky was not alone. Together, the available data demonstrate that an inordinate number of BMW model Z4s experienced problems related to cracked wheels (Docket No. 66, ¶¶19-20). BMW had been involved in similar litigation concerning cracked alloy wheels on other models, but continued to deny liability for Z4 vehicles, including the vehicle Plaintiff leased. Plaintiff's investigation, including expert testing by a metallurgist, verified the problem. *Id.* BMW of North America disputes liability. Nevertheless, as discussed further below, it has agreed to provide virtually all of the relief Plaintiffs set out to obtain, and does not oppose this motion.

### B. PROCEDURAL HISTORY

Barry Jekowsky filed this class action on May 10, 2013, alleging that BMW Z4s, equipped with Class Wheels, suffer from a common defect (cracking under normal driving

conditions during the warranty period), and that BMW has consistently refused to offer the needed replacement, requiring the consumers to incur substantial costs. Plaintiff contends that BMW's failure to disclose the subject wheels' tendency to crack prematurely, and failure to honor its warranties, violated federal and California consumer protection laws (Docket No.1). On July 17, 2013, Plaintiff filed his First Amended Complaint. On August 9, 2013, the parties appeared at the Initial Case Management Conference before Judge Jeffrey White, to whom the case was originally assigned. On August 12, 2013, Defendant moved to dismiss Plaintiff's First Amended Complaint. On December 13, 2013, the Court denied the motion in part and granted it in part, allowing Plaintiff to amend. On January 10, 2014, Plaintiff filed his Second Amended Complaint (Docket No. 35), which Defendant answered on January 24, 2014 (Docket No. 37).

After providing initial disclosures pursuant to Rule 26(f) the parties commenced discovery. Documents were exchanged. Plaintiff took the depositions of multiple BMW employees and retained an expert in metallurgy (Docket No. 66, ¶¶19-20). Defense counsel deposed Jekowsky.

On April 17, 2014, the matter was reassigned to the present Court. Case management conferences followed. Plaintiff filed a Third Amended Complaint on June 12, 2014 (Docket No. 48).

The parties engaged in settlement discussions, and on October 20, 2014 attended a mediation before the Hon. Edward A. Infante ( JAMS), at which the parties reached an agreement in principal on the terms of a proposed nationwide class action settlement. In November 2014, the parties requested that the Court stay the litigation until February 2015 to allow time to finalize all aspects of the proposed settlement (Docket No. 59). The parties worked through several drafts to finalize the Settlement.

Plaintiff filed a Fourth Amended Complaint (Docket No. 73), the operative pleading. That complaint sets forth claims for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq*. (*Id.*, ¶36); the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.* (*Id.*, ¶58); California's Unfair Competition Law, Business and Professions Code §17200 *et seq*. (*Id.*, ¶67); the Song-Beverley Consumer Warranty Act, Cal. Civil Code §1790 *et seq.* (*Id*, ¶44).

Plaintiff moved for preliminary approval of the proposed settlement, which was granted. (Docket No. 72). Notice has been duly served and all other conditions of preliminary approval have been met. This motion follows, per the Court's Order (*Id.*), prior to the time for class members to opt out or object.

**C. SETTLEMENT TERMS**

The primary relief sought by the lawsuit was to require BMW to honor its warranties going forward with regard to the Class Wheels, to replace existing cracked wheels, and to reimburse Class Members for past repairs to Class Wheels and those tires that had been damaged by the wheel defects. The settlement achieves close to what the class could obtain after a successful trial. Among the benefits:

a. BMW NA will reimburse class members' out-of-pocket expenses for replacing cracked wheels during the warranty period (SA, III, A).

b. BMW NA will reimburse class members' out-of-pocket expenses for replacing damaged tires on cracked wheels during the warranty period (SA, III, A).

c. BMW NA will replace class wheels that sustain a crack during the warranty period without charge (SA, III, B).

d. BMW NA will replace free of charge repaired class wheels that class members had repaired (SA, III, C).

e. BMW NA will pay for the class administration, separate and apart from any recovery to class members (SA, IV, A).

f. BMW NA will pay a service award to class representative Barry Jekowsky in the amount of $5,000.00 (SA, IX, B).

g. BMW NA will pay attorneys' fees and costs in the amount of $635,000.00 (SA, IX, A).

h. BMW NA will distribute any residue as *cy pres* to the Legal Aid Foundation of Los Angeles (SA, IX, C).

Although the distribution of benefits partially involves a claims process, the elaborate efforts of the administrator during the notice and claims process ensure a high claimant response

(SA, I, 27; III, A; IV, A; IV, B; IV, D; IV, E; V, F). BMW will bear the expense of a neutral claims administrator. (SA ¶V(A), ¶IX(A).) Class Members give BMW and affiliated entities a release broad enough to cover claims that were, or could have been, raised in the action, but is expressly narrowed to matters "regarding the Class Wheels." (SA ¶¶VII(A).) Thus the release is carefully tailored to claims for which Class Members get relief. Class members may opt out (SA ¶VI, ¶VIII(B)) or object (SA ¶VII).

## III. ARGUMENT

### A. PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

Federal Rule of Civil Procedure 23(h) provides that, in a certified class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fees in this case, which is at present conditionally certified and which will obtain certification at the time of final approval, are authorized under both prongs of that Rule.

First, in the Settlement Agreement, the parties agreed that Class Counsel would make an application to the Court for an award of attorneys' fees, costs and expenses, and that BMW of North America "shall not oppose" an application for fees, costs and expenses in an amount not to exceed $635,000.00 (¶¶IX(A)). That paragraph provides:

> All expenses incurred in administering this Settlement Agreement, including, without limitation, the cost of the Class Notice, and the cost of distributing and administering the benefits of the Settlement Agreement, shall be paid by BMW NA, subject to the limitations contained herein and approval of the Court. For the purposes of this Settlement Agreement only, Defendant agrees to not oppose Class Counsels' application for attorney's fees and costs in the total amount of $635,000.00. BMW NA will issue a single check payable to Kemnitzer, Barron & Krieg LLP, for such fees and costs as approved by the Court, within fifteen (15) days after the Effective Date of the Settlement for Fees provided required documentation, such as W-9 forms, and payment instructions are timely provided to BMW NA by Class Counsel.

Defendants' agreement to compensate Plaintiffs' attorneys, although separate and apart from class recovery, is an important part of the settlement which was recommended by the mediator, and the Court should approve that aspect of the settlement.

Second, even in the absence of the Agreement, Plaintiffs would be entitled to an award of fees and costs under the Song Beverly Consumer Warranty Act (Civil Code §1794(d)), the Magnuson-Moss Act (15 U.S.C. §2310(d)(2)), and the California Consumers Legal Remedies

Act (Civil Code §1780(e)) .

Here, Plaintiffs have successfully secured both monetary relief to prevent future violations of California law, and injunctive relief to prevent similar violations from recurring in the future, thereby enforcing the legislative policy in favor of protecting consumers against defective vehicles. The settlement benefits a large class of persons who, because of the small sums at issue in comparison to the complexity of the law, and the need for technical expert opinion which few consumers could afford, would not otherwise be able to secure judicial relief. Plaintiffs are clearly the prevailing party in this case, and the fact that the case was resolved by settlement is irrelevant to that determination. (*See Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [critical factor in determining whether a party is successful is "the impact of the action, not the manner of its resolution"].)

**B. THE REQUESTED AWARD IS REASONABLE AND APPROPRIATE**

Plaintiff's claims arise entirely under states law, and in the absence of removal would have been determined by state law. Accordingly, the Court should apply California law in determining Plaintiffs' attorneys' fees. (*Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009); *MRO Communic's, Inc. v. AT&T Co.,* 197 F.3d 1276, 1281 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000).)

Under California law, "[i]n so-called 'fee shifting' cases, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method." (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26; *see also Downey Cares v. Downey Community Dev. Com.* (1987) 196 Cal.App.3d 983, 995-96; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985 ["Under Code of Civil Procedure section 1021.5 [a fee-shifting statute], if a court determines that attorney fees should be awarded, computation of those fees is based on the lodestar adjustment method as set forth in *Serrano v. Priest* (1977) 20 Cal.3d 25."] ["*Serrano III*"].)

Under this method, the court begins with a "touchstone" or "lodestar" figure, based on "a careful compilation of the time spent and reasonable hourly compensation of each attorney …

involved in the presentation of the case." (*Serrano III*, 20 Cal.3d at 48; *Ketchum v. Moses* (2001) 22 Cal.4th 1122, 1131-32; *Press v. Lucky Stores* (1983) 34 Cal.3d 311, 322.) The lodestar is, simply, the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. (*See, e.g., Serrano v. Unruh* (1982) 32 Cal.3d 621, 626-39 ["*Serrano IV*"]; *Press, supra,* 34 Cal.3d at 321-25.) The reasonableness of the hours claimed is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, [and] litigation tactics." (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)

In appropriate cases, the Court may then adjust the award up or down depending on various factors, including the complexity of the issues and the amount at stake; the results achieved; the promptness of the settlement; the skill of counsel; and the contingent nature of any fee award. (*Ketchum, supra,* 24 Cal.4th at 1132-22; *see also Serrano III*, 20 Cal.3d at 49 [listing seven factors, including the complexity of the questions and the skill displayed in presenting them and the contingent nature of the award]; *Lealao, supra,* 82 Cal.App.4th at 42, 45 [courts may consider experience of counsel, amount at stake and results obtained as lodestar enhancement factors]. )

Plaintiffs' request for attorneys' fees is based on the following lodestar for their time recorded through July 3, 2015:

| | Fees | Costs |
|---|---|---|
| Kemnitzer, Barron & Krieg | $421,555.00 | $29,985.45 |
| Chavez & Gertler | $125,930.00 | $11,385.27 |
| | | |
| TOTAL | $547,485.00 | $41,370.72 |

This time does not include the significant additional work that will be necessary to oversee the distribution of the funds and other benefits, respond to class member inquiries, and efforts in connection with the final briefing and hearing on final approval.

//

**1. The Time Expended by Plaintiff was Reasonable and Necessary to Achieve the Final Outcome, and is Well Within the Range of Fee Awards for Litigation of This Type**

The time expended by Class Counsel was reasonable and necessary to achieve the very successful final outcome in this case. The fee award resulted from an arms-length negotiation before a well-respected mediator, and the parties waited until after reaching resolution of the substantive claims to address Plaintiffs' attorneys' fee claim (Kemnitzer Decl. ¶¶4-5).

The fees requested are more than reasonable given the nature of the litigation, and are far below average for a class action of this magnitude. Though the award will not come from the settlement fund, and, as such, the fee award may not be justified solely as a percentage of the recovery, it is still appropriate to "cross-check" the lodestar by comparison to the value of the settlement to ensure that the fee awarded is reasonable and within the range of fees freely negotiated in the legal marketplace in comparable litigation. (*See In re Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 557-58; *Lealao, supra,* 82 Cal.App.4th at 49.) The "benchmark" award in common fund cases in the Ninth Circuit is 25% of the aggregate benefit to the class. (*In re Consumer Privacy Cases* at 557 n.13.) In this case, the requested fee award is a small fraction of the benefit to the class.

**2. The Process for Arriving at the Negotiated Fee Award was Fair and Equitable**

In discharging its duty to determine the fairness of attorneys' fees in a class action settlement, the Court's primary concern is to ensure that the negotiation process leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." (*Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003); *see Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999), *cert denied,* 529 U.S. 1066 (2000).) Where, as here, "the fee was negotiated at arms' length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class … the Court [should be] reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated…." (*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* 1992

U.S.Dist. LEXIS 14337 at *13 (C.D. Cal. June 10, 1992).)

As described in Mr. Kemnitzer's declaration, the negotiation process in this case was entirely arms-length and was conducted under the auspices of an experienced mediator and former judge. The parties reached agreement on the substantive terms of the settlement prior to turning to the negotiation of fees. (Kemnitzer Decl. ¶¶4-5.) There are no indicia of collusion.

**3. The Hourly Rates for Plaintiff's Counsel are Well Within the Range of Rates Charged by Lawyers with Similar Skills, Qualifications, and Experience**

The appropriate hourly rate for purposes of awarding attorneys' fees is the prevailing billing rate of attorneys with comparable qualifications, skill and experience within the community where the litigation takes place. (*See Ketchum, supra,* 22 Cal.4th at 1133 [citing *Serrano IV,* 32 Cal.3d at 625].) The prevailing market rate is determined by the declarations of the claimant's attorneys, other attorneys, and orders from other courts confirming counsel's rates. *United Steelworkers v. Phelps Dodge* 896 F.2d 403, 407 (9th Cir. 1990). The lodestar rate may be "based on the present hourly rate rather than the lesser rate applicable when the services were rendered," which is "tantamount to an interest rate." (*Graham v DaimlerChrysler* (2003) 34 Cal.4th 553, 584.)

The qualifications and experience of Plaintiff's counsel who performed work in this matter are described in the Kemnitzer and Chavez declarations filed herewith. As attested therein, the hourly rates on which the lodestar is based are well within the range of rates charged by lawyers with similar skills, qualifications, and experience in California; rates close to those requested have previously been approved and awarded by both federal and state courts; and rates have been only slightly raised in response to sharp increases in the costs of doing business in San Francisco (Kemnitzer Decl. ¶¶35-48).

**4. The Case Includes Many of the Factors Normally Warranting a Multiplier Award**

The lodestar multiplier method has always also permitted an enhancement of the lodestar by a multiplier to reflect the result achieved. (*Lealao, supra,* 82 Cal.App.4th at 45 ["California courts often use 'the amount at stake, and the result obtained by counsel' as relevant factors

justifying enhancement of a lodestar fee through use of a multiplier."]; *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 and Appendix (9th Cir. 2002) [multipliers in common fund cases range from 0.6 to 19.6, with most in the 1.0-4.0 range]; *Wershba v. Apple Computer* (2001) 91 Cal.App.4th 224, 255 ["Multipliers can range from 2 to 4 or even higher."].) Given the extent of Defendants' conduct, the expertise of Plaintiffs' counsel, and the contingent nature of any recovery, in the absence of the Settlement Agreement a multiplier would be entirely appropriate in this case. However, the lodestar in this case is remarkably close to the amount requested. (Kemnitzer Decl. ¶7).

Class Counsel assumed all of the risk of the litigation, which was undertaken solely on a contingent basis with no guarantee of recovery. Although the parties agreed to settle relatively early in the proceedings, the complexity of the issues is demonstrated by the fact that the parties required several months and additional negotiation in order to finalize all the terms of the settlement. The case settled relatively quickly and efficiently due to Class Counsel's high degree of expertise in both the substantive issues and the litigation of consumer class actions generally. (Kemnitzer Decl. ¶¶9-29.)

In addition to achieving excellent results for the members of the class, Plaintiffs' successful litigation of this case also conferred valuable benefits on the public at large. As reflected in California's "private attorney general statute," Code of Civil Procedure §1021.5, this State has a strong public policy in favor of "encourag[ing] public interest litigation that might otherwise be too costly to pursue," and of ensuring that "worthy claimants [are not] silenced or stifled because of a lack of legal resources." (*Folsom v. Butte County Ass'n of Gov'ts* (1982) 32 Cal.3d 668, 683-84.) The public benefit of the enforcement of these rights through this settlement is another factor that supports an award of attorneys' fees, as well as the requested service award, here.

**C. PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF COSTS**

Plaintiffs are also entitled to recover the costs incurred in the action. (F.R.C.P. 54(d)(1) ["costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; F.R.C.P. 23(h) [in a certified class action, "the court may award …

nontaxable costs that are authorized by law or by the parties' agreement"]); *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1421-22 [discussing cost awards under California law.) These costs of $41,370.72 are itemized by category in the accompanying exhibits and declarations of counsel, and are clearly reasonable. (Kemnitzer Decl. ¶7-8, Exh. B.)

### D. THE COURT SHOULD AWARD THE CLASS REPRESENTATIVE THE REQUESTED SERVICE FEE

Subject to the Court's approval, the settlement provides for a service award of $5,000.00 to Mr. Jekowsky to be paid in addition to the compensation to the class and Plaintiff's counsel. It has long been established that courts have discretion to approve such service or "incentive" awards to representative plaintiffs in class actions as compensation for their having expended time and effort for the benefit of others and for having undertaken the risks inherent in serving as a named plaintiff. (*See, e.g., Staton, supra,* 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp.294, 299 (N.D. Cal. 1994); *Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1393-1395.) The contributions of the class representative to the resolution of this action is described in the Declaration of Barry Jekowsky filed herewith.

## IV. CONCLUSION

For all of the reasons discussed above, Plaintiff and the Class respectfully submit that this unopposed motion should be granted, and ask the Court to enter an order awarding Plaintiff's service fee, and awarding Class Counsel their attorneys' fees and costs incurred in the successful litigation of this matter.

Dated: July 13, 2015

KEMNITZER, BARRON & KRIEG, LLP

CHAVEZ & GERTLER, LLP

By: /s/ *Nancy Barron*
NANCY BARRON
Attorneys for Plaintiffs and the Settlement Class